# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TINA BOYD, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:  2:11-cv-00748-MHT** |
| | ) | |
| **KOCH FOODS OF ALABAMA,** | ) | |
| **LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF TARSHA HUNTER'S COMPLAINT

---

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    UNDISPUTED MATERIAL FACTS ........................................3

    A.    Nature and Organization of Defendants' Businesses. ..........................3

    B.    Koch and Koch-Ala's Immigration Compliance Program. .................5

    C.    Hunter's Alleged Evidence of Hiring of Illegal Aliens. ......................8

    D.    Hunter's Employment with Koch-Ala. ................................................9

    E.    Hunter's Complaint Regarding No Raise ..........................................10

    F.    Henry Jenkins Job Duties and Pay .....................................................12

    G.    Hunter's Discharge from Koch-Ala. ..................................................13

III.   ARGUMENT ...........................................................................15

    A.    Boyd Has Failed to Establish the Requirements of Plaintiff's RICO Claim. .................................................................................................15

        1.    The elements of § 1962(c) RICO claims. .................................15

        2.    Defendants have not conducted an enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c). ...................................................................................17

        3.    Koch and Birchfield did manage, operate or conduct the alleged enterprise. .................................................................................22

        4.    Hunter's RICO claims must be dismissed as she cannot to establish her injury was directly caused by Defendants' predicate acts.............................................................................24

        5.    Hunter has no facts that the required predicate acts were committed...............................................................................34

    B.    Hunter Does not Have Evidence to Establish the Elements Required for a Gender Discrimination Claim.....................................................39

        1.    Hunter has no facts for a pay discrimination claim under Title VII.....................................................................................39

B WCR 1059826 v1
2016061-000080  08/06/2012

2.    Hunter has no facts to support allegations of a discriminatory discharge claim. ....................................................................43

C.    Hunter Has no Evidence of an Equal Pay Act Claim. ........................44

D.    Hunter Has No Protected Activity to Support a Retaliation Claim. ...45

E.    Hunter's EPA Retaliation Claim Fails for Lack of Any Protected Activity. ................................................................................................48

F.    No Evidence of Causation Between Any Complaints and Hunter's Discharge. .............................................................................................50

G.    Hunter's Punitive Damages Claim Fails to Raise Genuine Issues of Material Fact.........................................................................................52

H.    No Cause of Action Exists for Felonious Torts. ................................53

IV.   CONCLUSION...............................................................................................55

B WCR 1059826 v1
2016061-000080  08/06/2012

## I.    INTRODUCTION

This Memorandum of Law is submitted on behalf of Defendants Koch Foods of Alabama, LLC ("Koch-Ala"); Koch Foods, Inc. ("Koch"); and David Birchfield ("Birchfield") (referred to collectively as "Defendants") in support of their motion for summary judgment as to Counts I, II, III, IV, V, and VI of Tarsha Hunter's ("Hunter") Complaint ("Hunter's Complaint") (Doc. 76) against all Defendants[1] and to dismiss Counts X, XI, XII, and XIII of Hunter's Complaint against Koch-Ala.[2]   For the reasons discussed below, Defendants are entitled to a dismissal of all Counts asserted against them in the Hunter Complaint.

Similar to the allegations filed by her Co-Defendant, Tina Boyd ("Boyd"), this case arises out of Hunter's termination from her employment with Koch-Ala. In this case, Hunter alleges she was discharged from her employment with Koch-Ala for a variety of reasons and attempts to turn her discharge claim into a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").   Counts I, II, and III of Hunter's Complaint contain various RICO claims, and Counts IV – VI are for claims entitled "Felonious Torts" and arise out of the acts that form the RICO claim.   Hunter's Complaint also alleges

---

[1] Counts I, II, III, IV, V, and VI are the only counts pending against Koch and Birchfield, so dismissal of those claims will dismiss those two Defendants from the case.

[2] Hunter's Complaint does not contain Counts VII or VII.

violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and the Equal Pay Act ("EPA").

Hunter's Complaint suffers from many fatal flaws, and Defendants have filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. Defendants continue to urge this Court to dismiss the Complaint for failure to state a claim upon which relief can be granted.

Further factual development is this case has revealed that the undisputed material facts show that Hunter was not subjected to any discrimination or retaliation. Hunter was replaced by another female employee, and no male employee engaged in similar conduct and was not discharged. Similarly, Hunter's Title VII and EPA pay claims contain no facts to support the conclusion that a higher-paid male employee had an equal or substantially similar job requiring equal skill, effort, and responsibility. Finally, Hunter's retaliation claims under Title VII and the EPA are due to be dismissed because Hunter did not engage in the necessary protected activity: a complaint of discrimination. Moreover, her alleged "complaint" occurred 13 months before she was discharged, and the individual she alleges she complained to was not the individual who discharged her. The undisputed material facts further show that Hunter was discharged because she provided confidential personnel information to another employee.

2

Hunter's RICO claims also fail.  No evidence exists of any enterprise or conspiracy between Koch-Ala, Koch, and Birchfield to hire illegal aliens.  Hunter's "facts" of the hiring of illegal aliens is not sufficient to establish a RICO claim. Most importantly, Hunter cannot demonstrate that her injury (her discharge from employment) was proximately caused by the alleged predicate acts, and thus she has no standing.  Finally, Hunter has no evidence to establish the requisite elements of the predicate acts that allegedly form the RICO violation. Any one of these deficiencies, of course, subjects Hunter's RICO claims to being dismissed.

## II.    UNDISPUTED MATERIAL FACTS[3]

### A.    Nature and Organization of Defendants' Businesses.

1.    Koch is in the business of processing chicken for sell to various entities.  (Exhibit 1, Elrod Decl. at ¶ 2).  Koch is the sole member of Koch Foods of Alabama, L.L.C. ("Koch-Ala"), which is a manufacturing facility located in Montgomery, Alabama.  (*Id.*).

2.    Among other functions, Koch-Ala has a Debone Facility and a Processing Facility (sometimes referred to as the Kill Plant).  The Debone Facility and the Processing Facility have a separate Human Resources Department and a separate Human Resources Manager.  (Exhibit 2, Birchfield at ¶ 2).

---

[3]These facts are submitted only for purposes of the Motion for Summary Judgment.

B WCR 1059826 v1
2016061-000080  08/06/2012

3.     Koch operates the corporate headquarters.   Koch does not manage the various facilities.  Specifically, it does not do the hiring for Koch-Ala. (*Id.* at ¶ 3),

4.     Robert Elrod is the Human Resources Director for Koch.  The Complex Human Resource Managers for each of the various subsidiaries, including Koch-Ala, report to him.   Although each of the Complex Human Resources Managers report to him, they are allowed autonomy in hiring employees.  (*Id.* at ¶ 4).

5.     Birchfield became the Complex Human Resources Manager for Koch-Ala in September 2009.  (*Id.* at ¶ 3).

6.     Neither Robert Elrod or Birchfield have ever been instructed or encouraged by anyone at Koch or any of its subsidiaries to hire illegal aliens or employees not authorized to work in this country.  (Birchfield Decl. at ¶ 7; Elrod Decl. at ¶ 5).  They are not aware of any employee who was hired by Koch-Ala that they knew was not authorized to work in this country at the time of the hire. (*Id.*).

7.     Robert Elrod and Birchfield also have never been aware of any employee who was allowed to continue employment with Koch-Ala after they

4

were aware the employee was not authorized to work in this country.  (Birchfield Decl. at ¶ 8; Elrod Decl. at ¶ 6).

8.    Robert Elrod and Birchfield are not aware of any other Koch-Ala or Koch employee who knew that an individual who was hired by Koch-Ala knew at the time of hire the individual was not authorized to work in this country. (Birchfield Decl. at ¶ 9; Elrod Decl. at ¶ 7).

9.    Robert Elrod and Birchfield also have never been aware of any Koch-Ala or Koch employee who knew an individual who was allowed to continue employment with Koch-Ala was aware the employee was not authorized to work in this country.  (Birchfield Decl. at ¶ 10; Elrod Decl. at ¶ 7).

10.    Neither Robert Elrod nor Birchfield have instructed or encouraged any Koch-Ala employees to hire employees who were not authorized to work in this country or a specific employee who was not authorized to work in this country.  (Birchfield Decl. at ¶ 1; Elrod Decl. at ¶ 9).

**B.    Koch and Koch-Ala's Immigration Compliance Program.**

1.    Koch takes its obligation not to hire unauthorized workers seriously.  Koch has established  for all of the subsidiaries owned by Koch an Immigration Compliance Program.  (Elrod Decl. at ¶ 10).  That includes keeping an immigration log where information on each immigration issue is maintained.

5

This includes every applicant who is rejected due to his or her identification papers presented for purposes of completing an I-9 form were determined to be unacceptable and every instance where a no-match letter is received from the Social Security Administration. (*Id.*).

2.     Koch and Koch-Ala have been using the United States government's E-verify system since May 2007, and all employees hired by Koch-Ala are processed through the E-verify system. (Elrod Decl. at ¶ 11).

3.     The Employment Verification Policy of Koch and Koch-Ala sets out the policies and procedures for verifying employees are authorized to work. (Ex. A to Elrod Decl.). This policy was distributed to all Complex Human Resources Managers and the Human Resources Managers employed at all of Koch's subsidiaries. (*Id.*) The Employment Verification Policy states as follows:

(a)    "The company is required by law to complete a Form I-9 reflected that the company has checked documentation for identity and work authorization of <u>every</u> employee hired." (Ex. A to Elrod Declaration p. 1) (emphasis in original).

(b)    "<u>Every</u> offer of employment shall be contingent upon the candidate's provision of documentation of identity and employment eligibility sufficient for 'I-9 rules.'" (*Id.*) (emphasis in original).

(c)    "I-9 completion and E-Verify queries must be conducted by the different, trained company representative in relation to each employee hired." (*Id.*).

6

4.     Robert Elrod also distributed a Memorandum to all of the managers, supervisors, and human resources personnel at Koch-Ala regarding the Immigration Laws.  (Exhibit B to Elrod Declaration).  That Memorandum states that "[W]e feel it is appropriate at this time to confirm that we believe strongly in complying with the immigration laws and we expect each of you to do the same." (*Id.* at p. 1).  The Memorandum set forth the following requirements:

(a)     "All Form I-9s must be completed in full and the identification and work authorization documents must be reviewed and approved by the assigned Human Resources personnel to ensure compliance with immigration laws." (*Id.*).

(b)     "We will not allow anyone to work for Koch Foods who has not presented documents that appear valid and have cleared the Social Security check confirmation." (*Id.*).

(c)     "If you have actual proof that an employee has provided false information about their identity or work authorization, you should report that information to the Director of Human Resources immediately.  An investigation will be performed to determine proper action by the Company." (*Id.* at pp. 1-2).

5.     Other than Erica Moya (who Boyd hired), neither Robert Elrod or Birchfield are aware of any other individual who Koch-Ala employed that anyone in Koch-Ala's Human Resources management knew was not authorized to work in the United States.  (Birchfield Decl. at ¶ 23; Elrod Decl. at ¶ 16).  They are not aware of any individuals who Koch-Ala has hired or allowed to work that was

not authorized to work in this country.  This includes any workers provided by temporary workers.

**C.    Hunter's Alleged Evidence of Hiring of Illegal Aliens.**

1.    Hunter can identify only six individuals by name that she alleges were illegal aliens hired by Koch-Ala: William Rivera, Debbie Rivera, Jose Moreno, Jesse Torrez, Bianca with Employer No. 2113, and Antonio Costello. (Plaintiff Tarsha Hunter's Responses and Objections to the Defendant's Discovery Requests ("Hunter's Discovery Responses") No. 11, p. 7).

2.    William Rivera, Debbie Rivera, Tom Moreno and Jesse Torrez all were hired **before** Tarsha Hunter was hired on June 20, 2008.  (Birchfield Decl. at 51).

3.    The Koch-Ala employee with Employee No. 2113 was hired before Hunter was hired.  (*Id.*).

4.    Antonia Costello was hired on September 2, 2008, six months before Hunter began working in Human Resources.

5.    Hunter's co-Plaintiff, Tina Boyd ("Boyd"), was unable to identify by name any individuals hired by Koch-Ala that was unauthorized to work in this country.  (Exhibit 4, Boyd's Answers to Defendant's First Interrogatories, No. 13, p. 21).

8

6.     Hunter identified one other individual Alvaro Gomez. (Hunter's Discovery Responses, No. 11, p. 8).  David Birchfield signed his I-9 after reviewing Alvaro Gomez's Social Security card and Georgia State Identification card and determined that they appeared authentic.  (Birchfield Decl. at ¶ 50).

**D.     Hunter's Employment with Koch-Ala.**

1.     Hunter was employed by Koch-Ala on June 20, 2008. (Birchfield Decl. at ¶ 31).

2.     On March 30, 2009, Hunter was transferred to Human Resources as a Human Resources Clerk.  (Birchfield Decl. at ¶ 32).

3.     On April 1, 2009, Hunter received a written warning for a conflict with another employee and the overall manner in which she communicated with the other employee.  (Ex. H to Birchfield Decl.)

4.     On June 22, 2009, Hunter received a written warning from Tina Boyd, the Human Resources Manager for being tardy on ten occasions.  (*Id.*).

5.     On October 12, 2009, Hunter was made part of the Accounting group, reporting to Erica Banker, the Payroll Manager.  (*Id.* at 33).  Lyman Campbell was the Controller for the Company and Erica Banker's supervisor. (Exhibit 5, Lyman Campbell Decl. at ¶ 2).

B WCR 1059826 v1
2016061-000080  08/06/2012

6.     Hunter's duties in Payroll involved processing time sheets daily, running missing punch reports, and keeping in exception to schedules.  She also assisted Human Resources when time allowed.  (Exhibit 6, Banker Decl. at ¶ 3).

### E.     Hunter's Complaint Regarding No Raise

1.     On October 28, 2009, Hunter complained to Tina Boyd about not receiving a raise.  (Exhibit 8 to Exhibit 7, Boyd Deposition).  The e-mail she sent referenced two other employees (one female) receiving raises and stated "why is it that Tom Roberts denied my raise on last week that was promised to me in writing per my 6 months evaluation for taking on the position as Payroll Specialist back in March 2009, but signed off on a raise for an hourly associate on Thigh Debone last week of $0.35 and now today for Peggy Hill for $.50?"  (*Id.* at p. 4).

2.     Boyd responded stating that Hunter had not received a raise because of performance issues, in terms of errors and completing certain job duties attendance, and her personal conduct.  (*Id.* at p. 2)  Hunter had been tardy 25 times according to Boyd since they last talked about her attendance.  (*Id.*).

3.     According to Boyd, the job performance and attendance issues were accurate.  (Boyd Depo. at 251 l. 1-6).

4.     Hunter responded by asking why she did not get a raise and Henry Jenkins had one despite being tardy 16 times.  (Ex. 8 to Boyd Depo. at p. 2).

10

Boyd does not recall Hunter mentioning discrimination in the conversation about Henry Jenkins.  (Boyd Depo. at 243 1. 12-18).

5.     Boyd responded stating that she was not involved in the Henry Jenkins process and that since being moved to Human Resources Hunter had been tardy 45 times.  (Ex. 8 to Boyd Depo. at p. 1).

6.     Hunter subsequently met with Lyman Campbell, Erica Banker, and Tina Boyd on November 3, 2009.  (Campbell Decl. at ¶ 3; Banker Decl. at ¶ 4).  In that meeting, Hunter again asked about her raise and referenced Henry Jenkins being paid more than her.  At no time, however, did Hunter state that she felt she was being discriminated against because she was female or reference the fact that Henry Jenkins was a male employee.  (Campbell Decl. at ¶ 4; Banker Decl. at ¶ 5; Boyd Depo. at 243, l. 12-18; 254, l. 13-23).

7.     Hunter's complaint to Boyd was not that she thought she should be paid the same as Henry Jenkins, but that Hunter had been denied a raise.  (Boyd Depo. at 254 1. 20)

8.     Hunter never made any complaints to Birchfield about being discriminated against in her pay or that male employees were paid more.  (Birchfield Decl. at ¶ 36).

B WCR 1059826 v1
2016061-000080  08/06/2012

9.     All of the discussions Birchfield had with Hunter about her pay occurred in 2009.  (Birchfield Decl. at ¶ 41).

### F.     Henry Jenkins Job Duties and Pay

13.     Henry Jenkins's job was working in the production area as Production Control/Inventory Analyst.   He reported to the Shift Production Manager Efrain Juarez.  He also reported at times and took direction from the Plant Manager and the Production Manager.  (*Id.* at ¶ 40).

14.     Henry Jenkins's position involved providing production reports for the second shift, training and overseeing inventory counters, and assisting inventory counters if needed.  The job required being in the shipping warehouse sometimes until 2:00 or 3:00 a.m.  (*Id.* at ¶ 39).

15.     In November 2009, Hunter's hourly rate was $11.59 per hour and Henry Jenkins's hourly rate was $13.20.  (Ex. J to Birchfield Decl.).  For a portion of 2009, Hunter made more per hour than Henry Jenkins ($11.26 for Hunter as compared to $10.00 for Jenkins).  (*Id.*)  After Henry Jenkins received a raise to $13.20 on August 14, 2009, he then made more than Hunter.  (*Id.*).

16.     In August 2010, Hunter's pay was increased to $13.20 an hour. (*Id.*)

12

**G.    Hunter's Discharge from Koch-Ala.**

1.      Hunter was discharged in November 2010.  (Birchfield Decl. at ¶42).

2.      Birchfield made the decision to terminate Hunter more than one year after the November 3, 2009 discussion with Lyman Campbell, Erica Banker, and Boyd. (Banker Decl. at ¶ 4). Campbell and Banker were not involved in this decision.  (Banker Decl. at ¶ 6; Campbell Decl. at ¶ 5).

3.      Hunter was discharged for providing confidential payroll information to another employee Randy Sharpley.  (Birchfield Decl. at ¶ 43, 44). The information was of employees' names and clock numbers, and was a computer list of employees who had missing time entries.  (*Id.* at ¶ 42).  The information was for both union and non-unions employees.  (*Id.*at ¶ 43).

4.      Randy Sharpley was a representative of a union representing some of the Koch-Ala employees.  (*Id.*at ¶ 42).

5.      Shawn Collins and Randy Sharpley both informed Birchfield that Hunter had provided the information to Rusty Sharpley.  (*Id.*at ¶ 42, 43).

6.      Hunter wrote a statement for David Birchfield that admitted she had provided the information to Randy Sharpley and stated she had previously provided Randy Sharpley similar information.  (Ex. K to Birchfield Decl.).

13

7.      Hunter's actions were a violation of Koch-Ala's Human Resources Department Statement of Confidentiality requiring her to keep "all HR information, documentation, inventory, etc. in strict confidence."   (Ex. F to Birchfield Decl.; Birchfield Decl. at ¶ 26).

8.      On December 15, 2009, Hunter signed the Statement of Confidentiality.   (Ex. L to Birchfield Decl.).   The Statement of Confidentiality stated that "I also understand that any breach of confidentiality will be grounds for immediate termination."   (*Id.*).

9.      Hunter's actions also violated the Employee Computer Operating and Security Policy, which provides that "using confidential information for anything other than its intended use is prohibited, without prior management approval."  (Ex. E to Birchfield Decl.; Birchfield Decl. at ¶ 26).

10.     On June 12, 2008, Hunter signed an acknowledgment that she read and signed the Employee Computer Operating and Security Policy.  (Ex. M to Birchfield Decl.).

11.     Hunter was replaced by a female employee, Sabrina Bell. (Birchfield Decl. at ¶ 49).

12.     No other employee has provided this type of information to another employee, except perhaps another female employee.

14

13.   The decision about how much to pay Henry Jenkins was made by the Plant Manager, Tom Roberts.  The amount paid to Hunter would have been made by Birchfield or the Controller, Lyman Campbell.  (*Id.*at ¶ 40).

## III.   ARGUMENT

### A.   Boyd Has Failed to Establish the Requirements of Plaintiff's RICO Claim.

#### 1.   The elements of § 1962(c) RICO claims.

Section 1962, the substantive provision of RICO, sets forth four distinct categories of "Prohibited activities."  *See* 18 U.S.C. § 1962.  Plaintiff bases her RICO claim upon an alleged violation of section 1962(c),[4] Within the Eleventh Circuit, a civil RICO plaintiff alleging a "violation under § 1962(c) . . . 'must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994)); *see also Aeropower, Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1148 (M.D. Ala. 2007).  In addition to these four elements, a plaintiff bringing a civil RICO claim must also satisfy the requirements of 18 U.S.C. § 1964(c), which states that "[a]ny person injured in his business or property by reason of" RICO's substantive

---

[4]Plaintiff does not identify what section of RICO her claim is brought under, but from her reliance on *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir. 2006), (Doc. 46 at ¶¶ 138.a.iii, 144, 145), is evident that she is bringing her claim pursuant to 18 U.S.C. 1962(c). *See Short v. Mando American Corp.,* 2011 WL 486144 *2 at n. 2 (M.D. Ala. 2011).

15

provisions has the right to "recover threefold the damages he sustains." 18 U.S.C. § 1964(c). Thus, civil RICO claimants "must [also] show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Williams,* 465 F.3d at 1283.  A plaintiff must also establish one of the "predicate acts" identified in the RICO statute. *See Am. Dental Assoc. v. Cigna Corp.,* 605 F.3d 1283, 1290-91 (11th Cir. 2010).

Before evaluating the elements of a RICO claim it should first be noted the complete lack of any evidence of the basis for this claim, the alleged hiring of undocumented workers that Hunter claims resulted in the loss of her job.  Although Hunter's Complaint alleges that Koch-Ala hired "scores" of illegal aliens, Hunter can only identify six Koch-Ala employees that she believes were illegal aliens. (Hunter Complaint at ¶ 28; *See* Hunter's Discovery Responses, No. 13, p. 9).  Of the six, five were hired before Hunter was hired by Koch-Ala, (Birchfield Declaration at ¶¶ 51, 52); all six were hired before Hunter began working in Human Resources (*Id.* at ¶¶ 51, 32); and all six were hired before Birchfield -- one of the three members of the alleged enterprise -- was hired. (*Id.* at ¶ 52).  That alone shall be sufficient to dismiss a claim based upon the alleged hiring of undocumented workers.

16

2.   **Defendants have not conducted an enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).**

   a.   **No separate RICO enterprise exists.**

To satisfy the enterprise requirement, Hunter must establish an enterprise that is distinct from the RICO persons. Liability under RICO "depends on showing that the defendants conduct or participate in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). This requires "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001); *see also Goldin,* 219 F.3d at 1274-75.

The RICO claims in Hunter's Complaint should be dismissed because no facts establish a RICO enterprise that is distinct from the alleged RICO persons. As this Court recognized, the Eleventh Circuit requires that "there must be a RICO person distinct from the RICO enterprise alleged." *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Southeast, Inc.*, No. 2:09-cv-0192-MHT, 2011 WL 2893629, at *1 (M.D. Ala. July 19, 2011) (citing *Goldin,* 219 F.3d at 1271). This distinctiveness requirement demands that an enterprise be more than just a corporation and its employees, and is in line with several other circuits, as this Court previously stated:

17

[M]any other courts of appeal have refused to find a valid RICO claim where the alleged enterprise consists only of a corporation and its employees. *See, e.g.*, *Khurana v. Innovative Health Care Systems*, 130 F.3d 143, 155 (5th Cir. 1997), vacated on other grounds, *Teel v. Khurana*, 525 U.S. 979 (1998) ("The distinctiveness requirement may not be avoided by alleging a RICO enterprise that consists merely of a corporation defendant associated with its own employees or agents carrying on the regular affairs of the defendants.") (internal quotation marks and citation omitted) (quoted in *ISystems v. Spark Networks, Ltd.*, 2011 WL 2342523, *4 (5th Cir. 2011)); *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) ("employees acting solely in the interest of their employer, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise."); *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A .*, 30 F.3d 339, 344 (2d Cir. 1994) (distinguished and left intact by *Kushner*, 533 U.S. at 164) ("Nevertheless, by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented."); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 377 (6th Cir. 1993) ("Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself.").

*Danny Lynn Elec. & Plumbing, LLC*, 2011 WL 2893629, at *2.

Hunter's Complaint alleges that the RICO enterprise consists of "Defendants Koch, Koch-Ala and Birchfield."  (Doc. 76 ¶ 8).  Birchfield is an employee of Koch-Ala (*id.* ¶ 4), and Koch-Ala is a subsidiary of Koch that also licenses the name "Koch Foods" from Koch.  (*Id.* ¶ 5).  Hunter does not expressly identify the

18

alleged RICO persons, which should alone be grounds for dismissal, but it is clearly implied that all three defendants (Koch, Koch-Ala and Birchfield) are also the alleged RICO persons.  For example, Hunter alleges:

- The business operations are "run, managed and operated by Defendants, and their enterprise."  (Doc. 76 at ¶ 10).

- "Each Defendant [sic] participates in the management of the 'enterprise' . . . ."  (Id. ¶ 11).

- "Defendants and their 'enterprise' have for years engaged in the patterns of unlawful racketeering practices described herein."  (Id. ¶ 90).

- That predicate acts were committed "[a]s a regular part of their 'enterprise' of Defendants."  (Id. ¶ 25).

Considering that the enterprise is alleged to consist of all three defendants, these allegations show that there is no distinction alleged between any RICO persons and the RICO enterprise.  Indeed, this is exactly the type of "oddly constructed entity" contemplated by the United States Supreme Court when it had difficulty reconciling the language of the RICO statute with a position that necessarily meant a corporation was "employed by" or "associated with" an entity composed of itself and its related corporations and employees.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. at 164; *Danny Lynn Elec. & Plumbing, LLC*, 2011 WL 2893629, at *2.

19

The undisputed facts also show no enterprise exists for the hiring of illegal aliens.  Koch does not do the hiring of employees for Koch-Ala, and other than for the Complex Human Resources Manager, Koch has no involvement in Koch-Ala's hiring of any specific individuals.  (Elrod Decl. at ¶ 4).  Birchfield has never been directed to hire unauthorized workers or directed anyone else to hire unauthorized workers.  (Birchfield Decl. at ¶¶ 2, 7).  Other than Erica Moya, Robert Elrod and Birchfield are not  aware of any individuals who were hired by Koch-Ala that anyone at Koch-Ala knew was not authorized to work in this country.  (Elrod Decl. ¶ 7; Birchfield Decl. ¶ 9).

Furthermore, all of Hunter's evidence of the hiring of illegal workers (except one) occurred before Birchfield was employed by Koch-Ala.  The five individuals identified by Hunter as illegal aliens (*see* Hunter's Discovery Responses, No. 11, pp. 7, 8) were hired before Birchfield became the  Complex Human Resources Manager.  (Birchfield Decl. at 52).

Courts have dismissed RICO claims for failure to satisfy the distinctness requirement where the RICO enterprise and the RICO persons are, as here, one and the same.  *See United States v. Bergrin,* 707 F. Supp. 2d 503, 519 (D. N.J. 2010) ("Where the RICO persons and the enterprise are alleged to be the same individuals and corporations, there can be no distinctiveness."); *Kolar v. Preferred*

20

*Real Estate Investments, Inc.,* 2008 WL 2552860, *5 (E.D. Pa. June 19, 2008) ("While Plaintiff properly alleges that each Defendant is a RICO person and the Defendants form an enterprise . . . Plaintiff has failed to meet § 1962(c)'s distinctiveness requirement because Plaintiff's RICO persons and alleged RICO enterprise are one and the same."); *Zavala v. Wal-Mart Stores, Inc.,* 447 F. Supp. 2d 379, 383 (D.N.J. 2006).

Moreover, Hunter has failed to allege any acts of the Defendants that fall outside the normal business of Koch corporate entities.  Hunter essentially alleges that her injuries arise from Defendants' hiring practices that allegedly violate federal immigration law.  Hunter claims these alleged activities were done for the common purpose of (a) reducing labor costs, (b) generating revenue and profit, and (c) promoting business operations, products and brand name.  (*See* Doc. 76 at ¶ 90.)  Just as sending invoices and increasing profits are normal business activities for a waste collection corporation, so is hiring employees and increasing profits for a food processing corporation.  *See Danny Lynn Elec. & Plumbing, LLC*, 2011 WL 2893629, at *3 (citing *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987)).  "There is agreement among the Circuits that 'a separate [RICO] enterprise is not demonstrated by the mere showing that the [defendant] corporation committed a pattern of predicate acts in the conduct of its own

21

business.'" *Bates v. Northwestern Human Servs., Inc.*, 466 F. Supp. 2d 69, 86 (D. D.C. 2006) (citing cases); *see also Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d at 441 (5th Cir. 1987) (holding the plaintiffs did not meet the distinctiveness requirement where they failed to establish an alleged RICO enterprise engaged in activities that were different from its normal corporate business activities).

Indeed, the Supreme Court has emphasized there must be a showing that defendants conduct or participate in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves,* 507 U.S. at 185. Because there are no allegations that the Defendants were doing anything but conducting their normal affairs, rather than the specific affairs of the enterprise, Hunter has failed to state a RICO claim, and the RICO Counts of the Complaint should be dismissed with prejudice.

### 3.   Koch and Birchfield did manage, operate or conduct the alleged enterprise.

Even assuming Plaintiff can satisfy the enterprise requirement (which they cannot), Plaintiff must also show Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." *Reves,* 507 U.S. at 177. In *Reves,* the Supreme Court adopted the "operation or management test," in which "one is not liable under [Section 1962(c)] unless one has participated in the operation or management of the enterprise itself." 507 U.S. at 183. "The key to RICO liability is *actual* participation in the operation or management of the

22

enterprise, not job titles or mere employment." *Comcast of South Fla. II, Inc. v. Best Cable Supply, Inc.,* 2008 WL 190584, at *8 (S.D. Fla. 2008) (emphasis in original).   The conduct requirement ensures that any person or entity held liable under RICO has participated in the "operation or management" of the enterprise and is not a mere "deviser" of the fraud. *See Emery v. Am. Gen. Fin., Inc.,* 134 F.3d 1321, 1325 (7th Cir. 1998).

Based on the magnitude of "offenses that are classified as 'racketeering violations,'" the control requirement over a RICO enterprise is essential "to prevent an explosion of RICO civil strike suits targeting business disputes in which the plaintiff simply pleads the existence of a business relationship between the alleged wrongdoer-defendant and some third party."   *In re Ins. Brokerage Antitrust Litig.,* Nos. 04-5184 & 05-1079, 2007 WL 2892700, at *12 (D.N.J. Sept. 28, 2007).

The starting point of this is the complete lack of any evidence of the hiring of illegal aliens after Birchfield was hired in September 2009.   All of the individuals that Hunter identifies as illegal aliens were all hired before Birchfield was employed.  (Hunter's Discovery Responses, No. 11, pp. 7, 8; Birchfield Decl. at ¶ 52).   Furthermore, the evidence is that Koch-Ala does the hiring for the Montgomery facility.  (Elrod Decl. at ¶ 3).  Other than the hiring of the Complex Human Resource Manager, Koch does not do the hiring of employees for Koch-

23

Ala.  No one from Koch has directed Birchfield to hire illegal aliens.  (Birchfield Decl. at ¶ 7).  Finally, Robert Elrod, Koch's Human Resources Director, has never instructed or encouraged anyone at Koch-Ala to hire illegal aliens.  (Elrod Decl. at ¶ 9).  Accordingly, Koch and Birchfield are due - on these additional grounds - to be dismissed from the RICO violation of this case.  Moreover, if Koch and Birchfield are dismissed from this action, Koch-Ala is the only remaining Defendant.  A RICO enterprise cannot exist of a single entity.  *Short v. Mando Am. Corp.*, 2011 WL 486144 (M.D. Ala. 2011).

        4.      **Hunter's RICO claims must be dismissed as she cannot to establish her injury was directly caused by Defendants' predicate acts.**

To establish a RICO private cause of action, the plaintiff must prove she has been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).  As explained by the Eleventh Circuit, this provision implicates two distinct requirements: "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."' *Williams,* 465 F.3d at 1282-83.  The "by reason of" requirement, "implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Williams*, 465 F.3d at 1287 (citations omitted).

24

Hunter has been unable to identify a single unauthorized employee she contends was hired by Koch-Ala after Birchfield was hired. (Hunter's Discovery Responses, No. 11, pp. 7, 8; Birchfield Decl. at ¶¶ 51, 52). More importantly, all of the unauthorized workers Hunter has identified were hired before she went to work for Human Resources, and five of the six individuals were hired before Hunter worked at Koch-Ala. (Birchfield Decl. at ¶¶ 31, 51).

### a. Hunter was not the intended victim of the RICO scheme.

The United States Supreme Court has established dual requirements for RICO proximate causation: (1) the injury alleged must generally, be the "first step" harm caused by the alleged conduct; and (2) the alleged conduct must be "directly responsible" for the harm alleged rather than simply allowing the harm to come more easily. *Hemi Group, LLC v. City of New York, N.Y.*, 130 S. Ct. 983, 989-90 (2010); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992) (stating a plaintiff who is harmed as a result of the "misfortune visited upon a third person" by the alleged RICO violations cannot establish this direct relation). Stated differently, the real issue is "was the plaintiff in the category of people meant by the statute to be safeguarded, and was the harm that which the act meant to avoid?" *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 & n.3 (2d Cir.), *cert. denied*, 519 U.S. 816 (1996). To this end, the Eleventh Circuit has held a plaintiff

cannot meet the "by reason of" requirement unless the plaintiff alleges she was the "intended victim" or "target" of the RICO scheme. *O'Malley v. O'Neill*, 887 F.2d 1557, 1563  (11th Cir. 1989) (dismissing employees' RICO claims based, in part, upon employees' failure to allege they were the intended victims of RICO mail fraud scheme).

Nowhere in her Complaint does Hunter allege she was the intended victim or target of Koch Ala's purported RICO scheme.   Hunter's allegations are insufficient to show she was the intended victim or target of Koch-Ala's alleged RICO scheme. Because Hunter has failed to plead adequately proximate cause, her RICO claim is due to be dismissed.

> ### b.   Hunter cannot establish her injury was directly caused by a RICO predicate act.

"'[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation' and the plaintiff's damages must 'flow from the commission of the predicate acts.'"  *Williams*, 465 F.3d at 1291 (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496-97 (1985)).   In determining whether proximate cause is sufficiently alleged, "'the central question [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries.'"  *Williams*, 465 F.3d at 1287 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  While "the

26

injurious conduct [need not be] the sole cause of the injury asserted, . . . in RICO cases there must be 'some direct relation' between the injury alleged and the injurious conduct in order to show proximate cause." *Id.* at 1288 (quoting *Anza*, 547 U.S. at 457). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Group*, 130 S. Ct. at 989 (quoting *Holmes*, 503 U.S. at 271, 274).

The United States Supreme Court has held a plaintiff fails to state a claim under RICO unless the injury was caused directly caused by a predicate act. *See Beck v. Prupis*, 529 U.S. 494, 507 (2000). If the injury was caused by a non-predicate act, the plaintiff cannot establish a civil RICO claim. *Id.* Specifically, in *Beck*, the United States Supreme Court held a RICO claim based upon the commission of the non-predicate act of discharge from employment, just like the claim alleged by Hunter, fails to state a claim under RICO:

> [W]e conclude that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO, is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d). As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff alleged injury from an act that is analogous to an "act of a tortious character", meaning an act that is independently wrongful under RICO. The specific type of act that is analogous to an act of a tortious character may depend on the underlying substantive violation the defendant is alleged to have committed. However, respondents'

27

> alleged overt act in furtherance of their conspiracy [i.e., the former bank president's termination] is not independently wrongful under any substantive provision of the statute. Injury caused by such an act is not, therefore, sufficient to give rise to a cause of action under § 1964 (c).

*Beck*, 529 U.S. 494 at 505 (internal citations omitted) (emphasis added); *see also Khurana v. Innovative Health Care Sys., Inc.,* 130 F.3d 143, 149 (5th Cir. 1998) (holding plaintiff failed to state a claim under RICO as his discharge did not directly result from commission of predicate acts); *see also Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151 (6th Cir. 1990) (holding that because employee's injuries were a result of being fired, not of RICO violation, plaintiff discharged after reporting employer's RICO scheme lacked standing to bring suit).

Hunter cannot establish she was directly injured by Koch-Ala's predicate acts. The only predicate act Hunter alleges is the employment of illegal aliens. Hunter's only financial injury is loss of her job. The termination of employment is not an independently wrongful act under any provision of RICO.

### c.   No cause of action exists under RICO for a discharge claim.

A plaintiff who merely alleges she was terminated from her job, particularly for refusing to participate in or for complaining about her employer's RICO violations, fails to state a cause of action under RICO. *See Beck*, 529 U.S. at 507. In *Beck*, the United States Supreme Court resolved the split among the circuit

28

courts regarding whether a plaintiff could state of cause of action under RICO for a wrongful termination of employment carried out in furtherance of an alleged RICO conspiracy. *Beck*, 529 U.S. at 500. The plaintiff in *Beck* was a bank president who claimed the bank terminated his employment after he uncovered and opposed the bank's acts of racketeering, including falsification of financial records and diversion of corporate funds for personal use. *Id.* at 498. The bank president alleged his termination was done in furtherance of the conspiracy. *Id.* The Eleventh Circuit of Appeals dismissed the former bank president's RICO claims on the basis his termination was not directly caused by the racketeering activities. *Beck v. Prupis*, 162 F.3d 1090, 1098 (11th Cir. 1998) (holding "a terminated whistle blower, although he may have a wrongful termination claim, has not suffered an injury that was proximately caused by the defendants' racketeering activities").

The Supreme Court sided with the majority of the circuit courts, which have held a claim for termination of employment in furtherance of the conspiracy fails to establish a cause of action under RICO. *Beck*, 529 U.S. at 505. The *Beck* decision was consistent with the Eleventh Circuit's repeated rejection of wrongful termination claims under RICO based upon lack of proximate cause. *O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989); *Morast v. Lance*, 807 F.2d 926, 932-33 (11th Cir. 1987). In *O'Malley*, the vice-president and the dean of admissions at a

<center>29</center>

private, Catholic school alleged they were fired because of their refusal to participate in the financial cover-up of the school's economic condition. Similar to Boyd, the vice-president and the dean of admissions contended, they were injured in "their business and property" by reason of their terminations as a <u>direct result</u> of their employer's racketeering activities. *O'Malley*, 887 F.2d at 1560 n.17. The Eleventh Circuit affirmed dismissal of the RICO claims pursuant to their failure to demonstrate direct cause between their injury (termination) and the RICO predicate acts alleged (mail fraud).

> The plaintiffs have not established that causal nexus. Neither in their complaint nor in their RICO Case Statement do plaintiffs demonstrate that they were injured by the alleged acts of mail fraud. Instead, they allege that their injury arose as a result of their refusal to participate in or to conceal the fraudulent scheme. <u>Therefore, by their own allegations, the proximate cause of plaintiffs' injuries was [the school's] decision to fire them for refusing to participate in or to conceal the scheme -- not the mail fraud scheme itself</u>. It may well be true that the commission of the predicate acts constitute the "but for" cause of the firings. However, that tenuous relation between the harm and the predicate acts is not sufficient to confer standing. RICO does not provide a remedy for every injury that may be traced to a predicate act. . . . We hold that there is no principled difference between a discharge for refusal to participate in the predicate acts alleged and a retaliatory discharge for reporting such illegal activity. <u>In either case the injury does not flow directly from the predicate acts</u>.

*O'Malley*, 887 F.2d at 1561-62 (internal citations omitted) (emphasis added).

The United States Supreme Court's decision in *Beck* and the Eleventh Circuit's prior rulings are also consistent with the majority of federal court

30

decisions dismissing RICO claims similar to the one asserted by Boyd. *See Bowman v. W. Auto Supply Co.,* 985 F.2d 383, 388 (8th Cir. 1993)*; Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 24 (2d Cir. 1990); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 48 (1st Cir. 1991) (holding "a claim for wrongful discharge cannot be successfully pursued under civil RICO when the injury itself is not the result of a predicate act"); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294 (9th Cir. 1990) ("[W]e hold that Reddy lacks standing to sue under § 1962(c) because the injury he suffered was the result of his alleged wrongful termination and was not caused by predicate RICO acts."); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1216 (5th Cir. 1988); *Deguelle v. Camilli*, 2010 U.S. Dist. LEXIS 35834, at *33-34 n.10 (E.D. Wis. 2010) (dismissing plaintiff's complaint with prejudice rather than granting leave to amend "because the plaintiff's lawsuit constitute[d] a rather thinly veiled attempt to transform allegations of wrongful termination into a RICO action); *Pardy v. Gray*,  2008 U.S. Dist. LEXIS 53997, at *9 (S.D.N.Y. July 15, 2008) ("Even assuming [Plaintiff] was fired for reporting [ ] fraud to senior management, Plaintiff has no standing to assert RICO claims because the alleged RICO violations did not proximately cause Plaintiff's injury.").

It is well-established under federal law that a wrongful discharge is not a predicate act under RICO.  All of the circuit courts that have considered this issue

have held that a wrongful or retaliatory termination is not a predicate act and fails to provide a sufficient basis for a civil RICO claim. *See, e.g., Beck v. Pupris*, 529 U.S. 494, 500 (2000) (noting that when the "overt act [is] as in the instant case merely termination of employment" it is "not, therefore racketeering activity"); *Reddy v. Litton Industr.,* 912 F.2d 291, 294 (9th Cir. 1990) (holding wrongful discharge is not a predicate act under RICO); *Burdick v. Am. Express Co.*, 865 F.2d 527, 529 (2d Cir. 1989) (per curiam) (employee terminated as a result of his complaints about employer's alleged fraudulent activities had no standing to sue under § 1962(c)); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215-16 (5th Cir. 1988) (plaintiff employee's discharge for refusing to participate in a fraudulent bank loan scheme did not satisfy § 1962(c) standing requirement); *Nodine v. Textron, Inc*., 819 F.2d 347, 349 (1st Cir. 1987) (employee's termination after he reported violations of Canadian customs laws and Foreign Corrupt Practices Act to his superiors did not confer standing under § 1962(c)); *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987) (employee discharged for reporting irregular transactions to the Comptroller of the Currency had no standing to sue under § 1962(c)); *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1121 (W.D. Wash. 2004) (dismissing RICO claims as plaintiff's civil allegations related to her employment were "not criminal ones of the sort contained in § 1961(1)"); *Tarr v. Credit Suisse Asset*

32

*Mgmt.*, 958 F. Supp. 788, 802 (E.D.N.Y. 1997) (noting plaintiff's wrongful termination allegation could not be a predicate act as it was a one-time "terminable" event rather than allegations of "a series of related predicates extending over a substantial period of time or a series of predicate acts that project a threat of repetition"); *Casper v. Paine Webber Group, Inc.*, 787 F. Supp. 1480, 1498 (D.N.J. 1992) (dismissing RICO claims based upon employer's tax fraud scheme allegedly furthered by the termination of plaintiff who opposed the scheme as "the allegedly wrongful termination of [plaintiff] [was] not a predicate act under RICO and the resulting injury to [plaintiff] [could] not form the basis of RICO standing").

Moreover, this argument ignores a common sense reading of the body of federal case law on this issue. As noted *supra*, federal courts have uniformly determined that an employee fails to state a RICO claim based upon the employee's termination regardless of whether the termination was motivated by the employee's refusal to participate in the wrongful activity or by the employee's reporting the activity to others. For example, the Eleventh Circuit held the motivation for the termination in civil RICO cases is irrelevant for purposes of causation.

> We hold that there is no principled difference between a discharge for refusal to participate in the predicate acts alleged and a retaliatory discharge for reporting such illegal activity. In either case the injury does not flow directly from the predicate acts.

33

*O'Malley*, 887 F.2d at 1562.

Hunter's allegations and facts fall well short, as Hunter must do more than simply allege that some racketeering act occurred and she was injured as a result; she must show that an injury flowed directly from a predicate act violation. *Pelletier v. Zweifel*, 921 F. 2d 1465, 1497, 1499 (11th Cir. 1991); *see also Gen. Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F. Supp. 1040, 1044 (M.D. Ala. 1996) (pre-*Iqbal*/*Twombley*, deeming "conclusory" allegation "that [plaintiffs] were damaged in their 'business and property'" failed to demonstrate standing). Without such a showing, there can be no recovery for the commission of the alleged predicate act.

> ### 5.    **Hunter has no facts that the required predicate acts were committed.**

A fundamental requirement under RICO is that any damages must be caused by a pattern of racketeering activity or predicate acts. Plaintiff relies on four separate predicate acts that prohibit certain actions to encourage illegal aliens from entering, residing, and working in this country: §§ 1324(a)(3)(A), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(iii), and 1324(a)(1)(A)(v). All of the predicate acts alleged by Plaintiff in the Complaint are violations of the Immigration and Nationality Act ("INA") that were added to RICO as predicate acts. Following the standards set forth by the Eleventh Circuit in *Edwards v. Prime, Inc., supra,* and

34

the Northern District of Alabama in *Hall v. Thomas*, 753 F. Supp. 2d 1113 (N.D. Ala. 2010), Plaintiff has no substantial evidence to establish any of the four alleged predicate acts.

### a.      § 1324(a)(1)(A)(iii).

All of the predicate acts alleged by Plaintiff in the Complaint are violation of the Immigration and Nationality Act ("INA") that were added to RICO as predicate acts.  The first section of the INA alleged by Plaintiff to be violated is 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a violation when any person "Knowing or in reckless disregard of the fact that an alien has come to, entered, or remained in the United States in violation of the law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien. . . ."  Plaintiff contends this statute was violated by Koch-Ala allowing illegal aliens to use and be paid under names and Social Security numbers that were not theirs (Complaint at ¶ 138.a.i and ii) and employing illegal aliens without requiring them to establish their eligibility for employment in the United States. (*Id.* at ¶ 138.a.iii).  As set forth previously, Hunter has no evidence that any illegal aliens were actually hired by Koch-Ala after Birchfield was hired.  Furthermore, in *Hall v. Thomas*, that court rejected the use of this section as a predicate act and held that the act of employing

35

an illegal alien was not sufficient as a matter of law to violate § 1324(a)(1)(A)(iii). 753 F. Supp. 2d at 1157-61.

In *Hall,* the court found "[t]he conclusion that § 1324(a)(1)(A)(iii) requires more than simple employment of an illegal alien is consistent with both the plain text and context of the provision." *Id.* at 1158. The court also reviewed the plain meaning of "harbor" and the other provisions in 8 U.S.C. § 1324 and determined that "harbor . . . requires something more than simple employment of an unauthorized worker in reckless disregard of that status." *Id.* at 1159. The court thus concluded as follows:

> Accordingly, while it is clear that the act of employing an illegal alien may be significant evidence that an employer has harbored an authorized alien in violation of § 1324, unless that employer has provided further material aid constituting "substantial facilitation," that alone is not sufficient.

*Id.* at 1160.

Plaintiff certainly will argue that the *Edwards v. Prime* case held that merely employing illegal aliens is sufficient for a violation of § 1324(a)(1)(A)(iii). As the court in *Hall v. Thomas*, 753 F. Supp. 2d 1113, demonstrated, however, that language was mere dicta. *Id.* at 1357. The court also found that this portion of the *Edwards* opinion was based on a case that the *Hall* court found required more than

36

"knowing employment of an unauthorized immigrant, without more." *Id.* Thus, Plaintiff's allegations fail to allege the elements of this predicate act.

### b. § 1324(a)(1)(A)(v).

Plaintiff's claim under 8 U.S.C. § 1324(a)(1)(A)(i) similarly is due to be dismissed.  That section applies to any person who "encourages or induces" an illegal alien to come into the United States with knowledge or a reckless disregard that his coming to the United Sates is unlawful.  8 U.S.C. § 1324(a)(1)(A)(iv).  Again, Boyd has no evidence that the alleged enterprise hired any illegal alien.  Furthermore, mere employment of illegal aliens is not sufficient to establish that an employer encouraged or induced illegal aliens under the statute, *United States v. Khanami*, 502 F.3d 1281, 1289 (11th Cir. 2007), and therefore, the elements of this predicate act have not been sufficiently alleged, as all the Complaint alleges in various formats is that Defendants allowed illegal aliens to work for Koch-Ala.

Again, *Edwards v. Prime*, *supra*, reached a different result, but did not overrule *Khanami*, instead finding the statute applied because in *Edwards* the employer provided names and Social Security numbers to the illegal aliens.  In contrast, the only actions by Koch-Ala alleged by Boyd to violate the statute was Koch-Ala hiring of illegal aliens of which Boyd has no proof.

37

### c.    § 1324(a)(1)(A)(iv).

Plaintiff's claims under this section require proof that the Defendants conspired to violate the provisions of the INA.  This allegation of a predicate act fails for several reasons.  First, Plaintiff has failed to prove any substantive violation under the other sections cited under the INA, so no conspiracy to violate the INA could have occurred.  Also, the undisputed facts are that no conspiracy existed (Elrod Decl. at ¶ 5, 9; Birchfield Decl. at ¶ 7, 11), and simply alleging conspiracy is not sufficient.

### d.    § 1324(a)(3)(A).

Plaintiff's attempt to use this section suffers from the same deficiencies as the Eleventh Circuit found in *Edwards v. Prime*, *supra*.   A violation of §1324(a)(3)(A) occurs when an employer hires 10 individuals who are aliens during a calendar year with not only actual knowledge that they are not authorized to work in this country, but also knowledge that the alien was brought into this country illegally.  *Edwards,* 602 F.3d at 1293.  Boyd has no evidence of 10 individuals being hired (since she could not identify one), and admits she does not what anyone knew about any unauthorized workers being brought into this county.

Hunter has no facts alleging that Defendants knew that 10 aliens hired by Koch-Ala during any calendar year were unauthorized to work and were **brought** into this country illegally.

38

Hunter has no facts to establish a predicate act, a substantial requirement under RICO.  Accordingly, the Plaintiff's RICO counts (and the felonious torts Count that allegedly flows from it) are due to be dismissed for failure to state a claim.

**B.  Hunter Does not Have Evidence to Establish the Elements Required for a Gender Discrimination Claim.**

1.  **Hunter has no facts for a pay discrimination claim under Title VII.**

To state a claim of intentional discrimination in compensation under Title VII, a plaintiff must plead that: (1) she belongs to a protected class; (2) she received low wages; (3) similarly situated male comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage. *Cooper v. Southern Co.*, 390 F.3d 695, 725 n.17 (11th Cir. 2004), *rev'd in part on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S. Ct. 1195, 163 L. Ed. 2d 1053, 1057-58 (2006); *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992) (compensation discrimination by gender); With regard to the similarly-situated prong, the comparator must perform jobs substantially similar to the plaintiff's; thus, the plaintiff must show that, in her job, she "shared the same type of tasks" as the comparator. *B&B Cash Grocery*, 975 F.2d at 1529; *Mulhall v. Advance Sec., Inc.*, 19 F. 3d 586, 598 (11th Cir. 1994) (plaintiff must show her job is "substantially similar" to male comparators);

39

*MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991) (higher-paid comparators must have "very similar job-related characteristics" to plaintiff).

In their Memorandum in Support of its Motion to Dismiss, Defendant pointed out that Hunter failed to plead any facts to show she was paid less than a male employee who had a substantially similar job and that her pay discrimination claim was based on her bald assertion that a similarly situated male employee earned more than her. (Doc. 87 at 42-43). The reason for such bald assertion is obvious now. Hunter's discovery responses make it clear that she asserts that she should have been paid the same as Henry Jenkins. (Hunter's Discovery Responses, No. 12, pp. 12, 13). The undisputed facts show, however, that Henry Jenkins and Hunter had substantially different jobs reporting to two different individuals. Hunter's position was an administrative position doing payroll functions. Jenkins was on the production side as an inventory coordinator. He trained and oversaw the individuals who counted inventory and produced the inventory reports. (Birchfield Decl. at ¶ 39). Henry Jenkins' pay was decided wholly independent of Hunter's pay. (*Id.* at ¶ 40). Henry Jenkins reported to Efrain Juarez, and Hunter reported directly to Erica Banker in the accounting group. (*Id.*).

40

The Eleventh Circuit has explained that in a traditional prima facie case comparator analysis, "the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *MacPherson v. University of Montevallo*, 922 F.2d 766, 775 n. 16 (11th Cir.1991).

This standard was applied in *Alexander v. Chattahoochee Valley Cmty. Coll.*, 325 F.Supp.2d 1274 (M.D. Ala. 2004), where the plaintiff acknowledged that no comparator performed a job that was identical, but argued that the comparator's primary job included research, planning, and raising revenue, and required an equal amount of skill effort and responsibility. The court rejected this comparison for the EPA claim, and also concluded that it was not sufficient for the Title VII wage claim, reasoning that even though the standard for the Title VII claim is more relaxed, the plaintiff's "job is too different from the other director jobs to which she compares it for her to be able to show that the jobs are even substantially similar." Id. at 1295.

This comparator standard has been difficult to match for many plaintiffs, particularly where the plaintiffs worked in different departments, performed different tasks, or worked for different supervisors than their alleged comparators.

41

*See Sumerlin v. AmSouth Bank*, 242 Fed.Appx. 687, 690 (11th Cir.2007) (considering plaintiff's admission that comparator "had different duties"); *Hill v. Emory Univ.*, 346 Fed.Appx. 390 (11th Cir.2009) (finding that comparator was not similarly situated where both employees shared a job title, reported to the same supervisor, established and managed a budget, served as technical experts to clients, oversaw the administration of data, and supervised staff, but comparator had different responsibilities and presented a competing offer of employment); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992) (a similarly situated employee performs the same type of tasks); *Sylva–Kalonji v. Board of School Com'rs of Mobile County*, No. 8–207–KD, 2009 WL 1418808 (S.D.Ala. May 20, 2009) (under *Wilson* standard, employee who interacted with other employees not similarly situated to employee who performed data entry); Coley v. Alabama Medicaid Agency, 2007 WL 4189472 at *7 (M.D. Ala. 2007); *Johnson-Price v. Alabama Dept. of Human Resources*, Not Reported in F.Supp.2d, 2010 WL 1268095 at *7-8 (M.D. Ala. 2010) (finding that reports could not be used as evidence of discrimination between plaintiff and comparators when "reports at issue here were conducted by different supervisors, who evaluated employees working in different offices, performing different job responsibilities.").

42

Further, there also were job performance differences between the two individuals.  According to Tina Boyd, the Human Resources Manager, Hunter was tardy 45 times in the seven months she had been in the Human Resources Department, and she also had performance issues.  (Ex. E to Boyd Depo; Boyd Depo. at 251 1.1-6)  Boyd also had received two written warnings for performance and attendance in 2009.  (Ex. H. to Birchfield Decl.)

2.      **Hunter has no facts to support allegations of a discriminatory discharge claim.**

Defendants' Memorandum in Support of its Motion to Dismiss argued that Hunter's Complaint alleges no facts to support her claim that she was discharged due to her gender.  (Doc. 87 at 49-50).  Specifically, there were no allegations that Hunter was replaced by a female or that other male employees engaged in the same misconduct she did but were not discharged.  The undisputed facts now show that Plaintiff could not meet that burden because Hunter was replaced by a female, and no male employee engaged in similar actions.  (Birchfield Decl. at ¶ 49).

Therefore, Hunter cannot produce evidence of a *prima facie* claim for discriminatory termination by alleging she was qualified for the job, yet she was fired and either replaced by someone outside of her protected class or that she was subjected to an adverse employment action in contrast with similarly situated employee outside of her protected class.  *Crawford v. Carroll*, 529 F. 3d 961, 97

43

(11th Cir. 2008); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2007); *Holifield v. Reno*, 115 F. 3d 1555, 1562 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

Furthermore, Koch-Ala also had a legitimate non-discriminatory reason for discharging Hunter.  Hunter violated the Human Resources Department Statement of Confidentiality and the Employee Operating Computer and Security Policy by providing to another employee personnel information on another employee.

### C.    Hunter Has no Evidence of an Equal Pay Act Claim.

In the Motion to Dismiss, Defendants also pointed out that Hunter's EPA claim was due to be dismissed because Hunter's Complaint does not allege the necessary elements for an EPA claim.  (Doc. 87 at 50-55).  An EPA violation is established by demonstrating that "the employer paid employees of opposite gender different wages for equal work for jobs which require 'equal skill, effort and responsibility' and which are performed under similar working conditions." *Steger v. General Electric Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003).  There was no allegation in Hunter's Complaint as to the position Henry Jenkins held at Koch-Ala, the dates Henry Jenkins held the position, the dates Henry Jenkins and Hunter allegedly performed equal work, the wages paid to Henry Jenkins and Hunter, or

there are no allegations of any factual basis for claiming that Hunter and Henry Jenkins performed equal work requiring equal skills, effort, and responsibility.

The reason for the lack of any allegations to support the EPA claim is now obvious. The undisputed facts now show that the positions held did not require equal skills, effort, and responsibility. As set forth previously, the positions of Henry Jenkins an Hunter were substantially different, involving different skills and responsibilities.

### D.     Hunter Has No Protected Activity to Support a Retaliation Claim.

Count XII of Hunter's Complaint alleges a retaliation claim under Title VII. "In order to state a claim of retaliation, an employee must allege that: (1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).

One of the elements of a retaliation case is that the Plaintiff must have engaged in a protected activity under Title VII. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). In Defendant's Motion to Dismiss, they demonstrated that courts have required a plaintiff in a retaliation claim to plead that he or she protested discrimination, and Hunter made no such allegations.

In none of the e-mails or discussions with Lyman Campbell, Erica Banker, Boyd or Birchfield did Hunter ever complain of discrimination or state that she thought Henry Jenkins was paid more because he is male.  (Ex. 8 to Boyd Depo.; Boyd Depo. at 243, l. 12-18; 254, l. 13-23; Campbell Decl. at ¶ 4; Banker Decl. at ¶ 5; Birchfield Decl. at ¶ 35).

"To engage in protected activity as required to satisfy the prima face case, 'the employee must still, 'at the very least, communicate her believe that discrimination is occurring to the employer,' and cannot rely on the employer to 'infer that discrimination has occurred.'"  *Pate v. Chilton Cty Bd. of Educ.,* 2012 WL 12872 at *17 (M.D. Ala. 2012) (quoting *Demers v. Adams Homes of NW, Fla., Inc.,* 321 Fed. Appx. 847, 852 (11th Cir. 2009)).

This Court in *Cartwright v. Tacala, Inc.*, 2000 WL 33287445 (M.D. Ala. 2000), granted summary judgment to the defendant employer on the plaintiff's retaliation claim on the basis that the plaintiff did not engage in protected activity. The plaintiff (a white employee) complained about a supervisor manipulating her time and the time of five other individuals, four of whom were black.  This Court found no protected activity as "there is no evidence to indicate that plaintiff suggested in any way that the manipulation occurred because of the race of any of the employees." *Id.* at *10.

46

To engage in protected activity, Hunter must have complained that she was paid less than Henry Jenkins because of her gender; it is not enough to complain that she was paid less. *See Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (commenting about absence of black employees without alleging discrimination was not protected activity); *Beyene v. Hilton Hotels Corp.*, 2011 WL 4527066 at *6 (D.D.C. 2011) ("There is no evidence, however, that the complaint referred to his religious or national origin. . . . Beyenne has put forward no evidence that his complaint to Hilton management alleged unlawful discrimination based on his membership in a protected class."); *Lowry v. Regis Salons Corp.*, 2006 WL 2583224 at *13 (N.D. Ga. 2006) (Court held that there was no protected activity because "Plaintiff's single complaint to Gayette of feeling 'uncomfortable' about Grimes's behavior . . . is insufficient to have put Gayette on notice that she was complaining of a sexually hostile work environment.").

Hunter did not complain about discrimination due to her gender and thus did not engage in any protected activity. The e-mails Hunter sent did not state that she was being discriminated against or reference the gender of any other employees. (Ex. 8 to Boyd Depo.). In the meetings with Lyman Campbell and Erica Banker, Hunter did not complain of discrimination or that Henry Jenkins was male.

47

(Campbell Decl. at ¶ 4; Banker Decl. at ¶ 5; Boyd Depo. at 243, l. 12-18; 254, l. 13-23).

**E.    Hunter's EPA Retaliation Claim Fails for Lack of Any Protected Activity.**

Similar to the problem under Hunter's Title VII retaliation claim, Count XIII - Hunter's EPA retaliation claim - failed to allege any protected activity.  The undisputed facts are that Hunter never complained of a gender based pay disparity.

The EPA incorporates the Fair Labor Standards Act anti-retaliation provision which makes it unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3) (emphasis added).  In *Kasten v. Saint-Gobain Performance Plastics Corp*., 131 S. Ct. 1325 (2011), the Supreme Court, while providing protection to oral complaints under § 215(a)(3), expressed the following for the complaint to be protected activity:  "To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  131 S. Ct. 1334-35.

Similar to Title VII retaliation, an employee who asserts retaliation under the EPA must demonstrate that she complained she was paid less <u>because of her sex</u>.  *See Ralston v. Bell Aerospace Servs.*,  Inc., 2010 U.S. Dist. LEXIS 58529 at *24 (M.D. Ala. 2010) (this Court noted "[r]etaliation claims under Title VII and the

<div align="center">48</div>

Equal Pay Act require the same elements"); *Duncan v. Madison County*, 2007 U.S. Dist. LEXIS 71985 at *29-30 (M.D. Ga. 2007) (holding employee did not engage in protected activity for purposes of asserting a Title VII retaliation as she merely complained about "low wages" and nothing in the record showed that Plaintiff complained she was paid less because of her gender); *Holiness v. Moore-Handley, Inc.*, 114 F. Supp. 2d 1176, 1185-86 (N.D. Ala. 1999) (holding employee did not engage in protected conduct for purposes of a Title VII retaliation claim based upon complaints about his pay where the employee did not specifically complain that he was paid less than a white employee for performing the same work or complain that his race was the reason that he was being paid less).

A mere complaint about being paid less than a co-worker is insufficient to establish the employee engaged in protected conduct. *See Duncan*, 2007 U.S. Dist. LEXIS 71985 at *29-30; *see also Hill v. Pinkerton Sec. & Investigation Services, Inc.*, 977 F. Supp. 148, 157-58 (D. Conn. 1997) (holding that the plaintiff failed to establish a prima facie case of retaliation under a state law retaliation claim with the same requirements as a Title VII where plaintiff questioned her supervisor about a differential between her pay and that of two other employees but did not indicate to her employer her belief that the pay differential related to her race or sex).

<div align="center">49</div>

**F.     No Evidence of Causation Between Any Complaints and Hunter's Discharge.**

Assuming that Hunter had engaged in protected activity, no facts exist to show any connection between the complaint and Hunter's discharge.  The only protected activity alleged in the Complaint is the statement made in the meeting Hunter had with Lyman Campbell, Erica Banker, and Tina Boyd.   (Hunter Complaint at ¶¶ 57, 79, and 91).   That meeting occurred in November 2009. (Campbell Decl. at 3; Ex. A to Banker Decl.)  None of the individuals present at that meeting were involved in the decision to discharge Hunter (Birchfield Decl. at ¶ 46)  And Birchfield was not aware of any complaints by Hunter of discrimination or that any other employee was paid more. (*Id*. at ¶¶ 36, 48).

Hunter was discharged on November 22, 2010. The discharge occurred almost 13 months after the alleged protected activity.  Thus, passage of time between the protected activity and the discharge demonstrate conclusively that the two are not related.  Causation not only cannot be established by time alone when the time period between the protected act and adverse employment decision is over 12 months, but the length of time demonstrates, as a matter of law, that no retaliation occurred.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient

50

evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  Additionally, the Eleventh Circuit has held that in the absence of any other evidence of causation, a three-month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); see also *Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (noting that a one-month gap between protected activity and adverse action would suggest a causal relationship, but refusing to recognize a three-month proximity between the protected activity and the adverse employment action as sufficient proof of causation).  Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.  *See Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004) (*citing Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001)).

More importantly, Birchfield, the decision-maker, was not aware of any complaints of gender discrimination.  (Birchfield Decl. at ¶ 48).  "A decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. Bellsouth Telecommc'ns, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). "To

establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta*, 212 F.3d at 590. The Eleventh Circuit has held an employee must show a decision maker's awareness "with more evidence than mere curious timing coupled with speculative theories." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).

Furthermore, Koch-Ala had a legitimate nondiscriminatory reason for discharging Hunter. It is undisputed that Hunter gave an employee payroll information about other employees. This was a violation of Koch-Ala's HR Confidentiality Policy and the Employee Computer Operating and Security Policy. No other employee has engaged in a similar violation. (Birchfield Decl. at ¶ 46).

## G. Hunter's Punitive Damages Claim Fails to Raise Genuine Issues of Material Fact.

To recover punitive damages under Title VII and § 1981, Hunter must prove Defendants discriminated against her with malice or reckless disregard of her rights. 42 U.S.C. § 1981a. She must show that when any discriminating actions were taken, Defendants knew they were acting in violation of those statutes. *Kolstad v. American Dental Ass'n.*, 119 S. Ct. 2118 (1999). Furthermore, an employer may not be vicariously liable for punitive damages for discriminatory decisions of its managerial agents when those decisions "are contrary to the

52

employer's good faith efforts to comply with Title VII." *Id*. Here, Koch-Ala and Koch have published an anti-discrimination, anti-harassment, and anti-retaliation policy.  (Exh. 13 to Boyd Depo.)  It also provided anti-discrimination, anti-harassment, and anti-retaliation training to its managers.  (Elrod Decl. at ¶ 29).  It has made good faith efforts to comply with Title VII.  Thus, even if the decisions by Koch-Ala and Koch employees were discriminatory, Koch-Ala and Koch cannot be held liable for punitive damages.

### H.    No Cause of Action Exists for Felonious Torts.

Counts IV through VI of Hunter's Complaint are styled as a claim for "felonious torts" based on "each felony of which the Defendants are guilty."  (Doc. 76 at ¶¶ 44-49).  Hunter relies on Alabama Code Section 6-5-370, which states in full:

> For any injury, either to person or property, amounting to a felony, a civil action may be commenced by the party injured without prosecution of the offender.

Hunter's reliance on this statute and any common law therein, is misplaced, however, because Alabama courts have held that Section 6-5-370 does not create a cause of action.  *Lewis v. Fraunfelder*, 796 So. 2d 1067, 1070 (Ala. 2001); *Preskitt v. Lyons*, 865 So. 2d 424, 429 (Ala. 2003) ("§ 6-5-370 only eliminates an obstacle for plaintiffs with a valid cause of action; it does not *create* a civil cause of action for any injury that amounts to a felony.")  Instead, the statute abrogates the common law rule of suspension, which prevented civil actions for injury to person or property, amounting to a felony, from being maintained without prosecution of the offender.  *Lewis*, 796 So. 2d at 1070.

B WCR 1059826 v1
2016061-000080  08/06/2012

Felonious tort claims brought pursuant to Alabama Code Section 6-5-370 have consistently been dismissed by this Court.  *See, e.g.*, *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1274 (M.D. Ala. 2010); *Thomas v. McKee*, 205 F. Supp. 2d 1275, 1291 (M.D. Ala. 2002).  In a RICO case decided two years ago in this Court, Judge Watkins dismissed the Hunters' felonious tort claims for failure to state a claim.  *Crooked Creek Properties, Inc. v. Ensley*, 2009 WL 3644835, at *7 (M.D. Ala. 2009).

Alabama common law also does not recognize that an independent, civil cause of action is automatically created every time a criminal act is allegedly committed.  In *Smitherman v. McCafferty*, 622 So. 2d 322 (Ala. 1993), the plaintiff's cause of action was recognized by the Court not because the defendant's actions violated a criminal statute, but because those actions breached a duty.  That case showed  that "'civil liability will ensue only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of  duty owed to the plaintiff, or constitute some cause of action for which relief may be granted.'"  Id. at 325 (quoting *Martinson v. Cagle*, 454 So. 2d 1383, 1385 (Ala. 1984)).  In *Martinson*, the Alabama Supreme Court "held that allegations that certain criminal acts were committed and that the plaintiffs were thereby injured did not state a cause of action for which relief could be granted."  In doing so, the *Martinson* court

54

clarified the common law rule by explaining that there must be some independent cause of action.  See Martinson, 454 So. 2d at 1385.

Hunter's claims for felonious torts are no different from the felonious tort claims dismissed by this Court in *Bell Aerospace*, *Thomas*, and *Crooked Creek*. Hunter's claims for felonious torts found in Counts VI of the Complaint should also be dismissed for failure to state a claim.

## IV.    CONCLUSION

For the reasons stated herein, Defendant Koch Foods of Alabama, LLC, requests that its Motion for Summary Judgment be granted with respect to all Counts in the Complaint, and Defendants Koch Foods, Inc. and David Birchfield request that their Motion to Dismiss be granted with respect to the Counts against them in Hunter's Complaint (Counts I-VI), with costs taxed against Hunter.

<div style="margin-left: 40%;">

s/ Wesley C. Redmond\
WESLEY C. REDMOND\
ASB-3666-D30W\
RACHEL E. VANNORTWICK\
ASB-4082-H67V\
Attorneys for Defendants

</div>

OF COUNSEL:
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 North 20th Street, Suite 1600
Birmingham, AL  35203
(205)328-0480 Telephone
(205)322-8007 Facsimile

B WCR 1059826 v1
2016061-000080  08/06/2012

## Certificate of Service

I certify that the foregoing has been served upon the following counsel of record by electronic mail or by depositing a copy thereof in the United States mail, properly addressed and postage-prepaid, this August 6, 2012:

Ms. Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226
Email:akhaynes@haynes-haynes.com

Mr. Barry Frederick
Ms. Brandi B. Frederick
The Frederick Firm
5409 Trace Ridge Lane
Birmingham, Alabama  35244
Email:Barry@frederickfirm.net
Email:Brandi@frederickfirm.net

Ms. Heather Newsom Leonard
Heather Leonard, P.C.
P.O. Box 43768
Birmingham, Alabama  35243
Email:Heather@HeatherLeonardPC.com

Mr. Richard E. Trewhella, Jr.
Carr Allison
100 Vestavia Parkway
Birmingham, Alabama  35216
Email:rtrewhella@carrallison.com

Mr. Warren B. Lightfoot
Maynard, Cooper & Gale, P.C.
2400 Regions/Harbert Plaza
1901 6th Avenue North
Birmingham, Alabama  35203-2618
Email:wlightfoot@lightfootlaw.com

s/Wesley C. Redmond
Of Counsel

56