IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TINA BOYD and TARSHA HUNTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:11cv748-MHT |
| | ) | (WO) |
| KOCH FOODS OF ALABAMA, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiffs Tina Boyd and Tarsha Hunter brought this
lawsuit against defendants Koch Foods of Alabama, LLC.,
David Birchfield (a human resources manager at Koch Foods
of Alabama), and Koch Foods Inc. (the corporation that
licenses the use of the name "Koch Foods" to Koch Foods of
Alabama), charging that they violated federal and state
laws.  When the court refers to all three defendants, it
refers to them as "defendants," but when it uses "Koch,"
it is referring solely to Koch Foods of Alabama.

Boyd claims that the defendants discriminated against her in violation of Title VII (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981a, 2000e through 2000e-17), § 1981 (the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981), and RICO (the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968) and that they committed various state torts. Hunter claims the defendants violated Title VII, RICO, EPA (the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206), and state law. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction), 42 U.S.C. § 2000e-5(f)(3) (Title VII), and 29 U.S.C. § 216(b) (Equal Pay Act).

This cause is now before the court on two outstanding issues from the defendants' summary-judgment motions. This court held a hearing on these motions on July 5, 2013. The hearing stemmed from the muddled and confusing nature of Boyd's and Hunter' submissions on summary judgment, which left the court unsure even as to what

2

claims they were raising and at a loss as to how to comb through their voluminous filings and poorly organized evidentiary submissions. At the hearing, the court granted the defendants' motions in part and denied them in part, as is set out in the order the court subsequently issued. See Order (Doc. No. 328). The court reserved ruling on summary judgment as to two claims: (1) Boyd's pay-discrimination claim based on race, brought under § 1981 and (2) Hunter's termination claim based on retaliation, brought under Title VII. For the reasons that follow, the court now will grant summary judgment on both claims.

## I. Summary-Judgment Standard

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  The court must view the admissible
evidence in the light most favorable to the non-moving
party and draw all reasonable inferences in favor of that
party.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio
Corp.</u>, 475 U.S. 574, 587 (1986).

## II. Boyd's Pay-Discrimination Claim

Boyd, an African-American woman, was the manager of
human resources at Koch Foods of Alabama's debone plant in
Montgomery.  She alleges that she was denied equal pay
because of her race,[1] contending specifically that she was
paid less than Julio Garcia, a Dominican employee.  Boyd's
contentions that Garcia received better pay because of his
race cohere with her numerous other allegations that Koch

---

1.  Boyd initially also claimed that she was denied
equal pay because of her sex in violation of Title VII.
However, at the hearing, the court concluded that she had
failed to exhaust her administrative remedies.
Therefore, Boyd's pay-discrimination claim was considered
on the merits only insofar as it was based on race and
brought under § 1981.

4

gave preferential treatment to Hispanic workers in general.

Claims of race discrimination under § 1981 are analyzed the same way as disparate-treatment claims brought under Title VII. See Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 n. 11 (11th Cir. 2000). Here, where the plaintiff's case relies on circumstantial evidence, the court applies the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Lee v. Mid-State Land & Timber Co., Inc., 285 F. App'x 601, 605-06 (11th Cir. 2008) (applying McDonnell Douglas framework to pay-discrimination claim brought under § 1981). Under that framework, the initial burden is on the plaintiff to establish a prima-facie case of discrimination by a preponderance of the evidence. See Mulhall v. Advance Sec., Inc., 19 F.3d 586, 597 (11th Cir. 1994). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged discrimination. Id. If the employer does so, the plaintiff must then

5

demonstrate that the proffered reason is a pretext for discrimination.  Id.

The plaintiff may establish a prima-facie case of compensation discrimination based on race by showing that: "(1) [s]he belongs to a racial minority; (2) [she] received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) [s]he was qualified to receive the higher wage." Lee, 285 F. App'x at 606.  Here, the dispute between the parties centers on whether Boyd has a similarly situated comparator in Garcia.[2]  A plaintiff need not identify a comparator with the exact same position who is paid more than she is; it suffices that the comparator "perform[s] jobs similar to the plaintiff's" and that the plaintiff and the comparator "share[] the same type of tasks." Cooper v. Southern Co., 390 F.3d 695, 735 (11th Cir. 2004) (quoting Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d

_____

2.  In her summary-judgment submission, Boyd also noted that Birchfield was paid more than she was; however, at the hearing, her attorney stated that she would focus her argument on Garcia.

1518, 1529 (11th Cir. 1992)), <u>overruled on other grounds</u> by <u>Ash v. Tyson Foods, Inc.</u>, 546 U.S. 454, 457 (2006). However, Boyd fails to establish that Garcia is a valid comparator even under this "relaxed standard." <u>Miranda</u>, 975 F.2d at 1526.

The parties focus primarily on whether an $ 8000 bump in pay that Garcia received in December 2008 was due to a promotion or was instead based on his race and unassociated with any increase in responsibilities. At the hearing, Boyd's counsel argued that Garcia was never promoted; if he were, Boyd would have known about it because of her position in human resources. Boyd's summary-judgment submission similarly argues that Koch did not promote Garcia to justify this raise. The only evidence that Boyd's submission cites for this contention is Boyd's own account in her deposition.

The defendants counter that Garcia was indeed promoted and that this promotion justified the $ 8000 pay increase. As evidence, the defendants offer a signed and dated personnel action form marked with the company logo

7

documenting Garcia's promotion from shift manager to shift manager/assistant plant manager.  See Birchfield Decl., Ex. A (Doc. No. 131-2) at 18.  In a declaration submitted by the defendants, Birchfield explained that an assistant plant manager "generally assists the Plant Manager and fills in for the Plant Manager in operating the entire facility when the Plant Manager is not available." Birchfield Decl. (Doc. No. 131-2) at 3-4.  At the hearing, the attorney for the defendants further elaborated that: "Garcia report[ed] to a different supervisor.  He ha[d] different job duties.  He[ was] in a different department. He[ was] in production while Ms. Boyd [wa]s in administration.  He ha[d] different and greater responsibilities."  Tr. (Doc. No. 335) at 73.

Boyd does not contend that the personnel-action form documenting Garcia's promotion is in any way invalid.  In the hearing, her attorney attempted instead to split hairs, arguing that Garcia was not promoted to assistant plant manager, but to "shift manager slash assistant plant manager."  Id. at 74 (emphasis added).  Boyd's counsel

8

failed to explain what significance, if any, this distinction has for the court's analysis.

Further, even if Garcia were not promoted (and the evidence strongly suggests that he was), Boyd does not provide any evidence to show that, absent the promotion, Boyd and Garcia performed similar jobs. At the hearing, Boyd's counsel stated that Garcia was "in charge of a shift, just like Ms, Boyd was over all of human resources." Id. at 74-75. However, this vague contention, unsupported by evidence or detail, would not be enough to establish that Garcia was a comparator for Boyd, even if Garcia was never promoted at all. Therefore, because Boyd has not identified any similarly situated comparators, she has failed to establish a prima-facie case of compensation discrimination based on race.

It appears that the true motivation behind Boyd's pay-discrimination claim as it relates to Garcia is tethered to her general allegation, interwoven throughout her various claims, that the defendants wanted to hire Spanish-speaking immigrants and that they severely

9

disadvantaged her in order to do so.  At the hearing, Boyd's attorney asserted that the real story behind Garcia's pay raise is that Garcia needed $ 8000 for his immigrant visa and told Koch that, if he was not given an increase, he would leave the company.  In her deposition, Boyd said that she had heard Garcia mention needing "some sort of visa or needing ... help[] with a visa."  Boyd Dep. (Doc. No. 131-4) at 49.  Boyd also attested that she believed Garcia was granted more pay because "he was a Spanish-speaking individual" and "Hispanic or Spanish-speaking people were sought after."  Id.  Even if Boyd is correct and Koch did give Garcia a promotion and raise to facilitate his immigrant visa, this attentiveness to Garcia's needs surrounding his immigration status does not amount to preferential treatment for Garcia or discrimination against Boyd based on race.  Indeed, there are many people of Caucasian ethnicity who immigrate to the United States and require flexibility and assistance from their employers as they navigate the immigration process.  Moreover, Boyd conflates being racially Hispanic

10

and being a person who speaks Spanish, and it is not altogether clear whether her allegation is that Koch actually had a <u>racial</u> preference or simply that it preferred its employees to be able to speak Spanish, which many people who are not racially Hispanic can do fluently.

To summarize, Boyd fails to establish a prima-facie case for compensation discrimination under § 1981. Moreover, even if her factual allegations are true, Boyd appears to conflate a willingness to accommodate an employee's immigration requirements and a preference for Spanish-speaking employees with <u>race-based</u> employment practices; the court cannot make this leap. Accordingly, summary judgment will be granted on this claim.

### III. Hunter's Retaliation Claim

The court now turns to Hunter's claim of retaliation, brought under Title VII. Hunter, an African-American woman, was employed at Koch as an administrative assistant. Hunter alleges that she complained about

11

discrimination in two different instances and was disciplined after both.  By her account, Koch then took the first opportunity it could find to terminate her.

Hunter says that she first complained about discrimination in the workplace in the spring of 2009 after a coworker directed racially charged remarks at her. In response, both she and the employee who had made the remarks were disciplined, even though Hunter denied any wrongdoing.  The defendants describe this incident as a "conflict" between Hunter and "another employee," Defs.' Br. (Doc. No. 129) at 12, and submit as an exhibit a copy of a memorandum sent from Boyd to Hunter about the incident, which Boyd describes as "a heated exchange" in which Hunter responded to her co-worker in an "unacceptable" manner.  Birchfield Decl., Ex. H (Doc. No. 131-2) at 55.  The memorandum also stated that it constituted a formal, written warning and that future incidents would result in further disciplinary action.

The second incident occurred when Hunter, through her job responsibilities related to payroll, discovered that

12

a male employee, Henry Jenkins, was earning a higher wage
than she was, even though Hunter believed he performed a
job similar to hers.  In November 2009, Hunter complained
about the pay disparity to three supervisors: Erica
Bryant, the payroll manager, Lyman Campbell, who
supervised Bryant, and Boyd.  Hunter says that Koch then
disciplined her for questioning the pay disparity and
limited her access to payroll information.  The defendants
argue that Hunter did not receive a raise due to issues
with her performance and submit as evidence an email from
Boyd to Hunter stating that Hunter had not been given a
raise because of deficiencies in her job performance, a
high number of tardies (about which she had previously
been admonished), and her "confrontational approach" to
interpersonal interactions. Birchfield Decl., Ex. I (Doc.
No. 131-2) at 60.

    In November 2010, Hunter was terminated "for providing
confidential payroll information to another employee[,]
Randy Sharpley," who was a union representative.  Defs.'
Br. (Doc. No. 129) at 16.  Doing this, Koch contends,

violated the company's confidentiality policy. The information that Hunter provided to Sharpley included the names and clock numbers of employees who had missing time-clock entries.

Hunter does not deny that she provided this information to Sharpley. However, she alleges that Boyd had instructed her to provide this information to Sharpley and that part of her job was to help him in his role as a union representative. In the instance in question, Sharpley was attempting to file a union grievance about employees who had not received an attendance bonus due to time-clock issues. Hunter says that she shared the list only "to help employees get their attendance bonus." Hunter Resp. (Doc. No. 245) at 108. Hunter argues that this incident was merely an excuse for Koch to fire her because of her earlier complaints about discrimination.

To establish a prima-facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) she suffered a

14

materially adverse-employment action; and (3) there was a causal connection between the protected activity and the adverse-employment action.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  If the plaintiff makes a prima-facie showing of retaliation, the defendant then must offer a legitimate, non-discriminatory reason for the employment action; if it does so, "the plaintiff must then come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were pretextual."  Gerard v. Bd. of Regents of State of Ga., 324 F. App'x 818, 826 (11th Cir. 2009).

Hunter fails to establish a prima-facie case because she does not show that there was any causal connection between the protected activity and her termination.[3]  In order to establish a causal connection between the protected activity and the adverse action, a plaintiff

---

3. The defendants also argue that Hunter's earlier complaints do not constitute protected activity.  The court need not resolve this issue, however, as Hunter has failed to show causation.

must show both (1) that the decision-makers were aware of
the protected conduct and (2) that "the protected activity
and the adverse [employment] action were not wholly
unrelated." Id. (alterations in original) (quotations and
citations omitted). As these prongs suggest, causation in
a retaliation case "is to be interpreted broadly." Gray
v. City of Montgomery, 756 F. Supp. 2d 1339, 1350 (M.D.
Ala. 2010) (Thompson, J.).

Here, Hunter has failed to show any relationship
between her complaints and her termination. The most
glaring deficiency in Hunter's argument is that a year
passed between Hunter's complaint about the difference
between her pay and Jenkins's and her termination.[4]
Hunter's complaint about racially charged remarks occurred
even further back in time. Hunter correctly notes that

---

4. At the hearing, Hunter's attorney said that, "At
least six months" passed between Hunter's last complaint
and her termination. Tr. (Doc. No. 335) at 101.
However, she confessed she could not actually remember
the exact timeline of events. Upon reviewing the record,
the court found that Hunter was terminated in November
2010 and that her latest complaint was made in November
2009, a full year earlier.

16

this temporal gap does not preclude her from establishing causation.  However, Hunter offers little else from which the court can infer that her termination was related in any way to her earlier complaints.  In her submission on summary judgment, Hunter contends that the disciplinaries she received after her earlier complaints establish causation for her termination and that another employee, Janice Bailey, engaged in the same conduct and was not fired.  It is possible that Hunter's first argument about the disciplinaries she received could show that Koch has a propensity for retaliation.  However, since Hunter neither presents any evidence that Koch retained any animus about her earlier complaints nor suggests that she made any additional complaints that could have spurred the decision to fire her, Hunter fails to connect these two incidents to her termination.  As for her second argument, Hunter cites as evidence only her own deposition and provides no additional evidence or detail about Bailey's actions and their aftermath.  As a result, the court has no way to determine whether Bailey's actions were similar

17

to Hunter's and whether Koch's response differed in a meaningful way.

The theory that Hunter emphasized in both her summary judgment submission and at the hearing is that Koch was too clever to fire her immediately after she made her two complaints and instead waited for the first available pretext to fire her so that it could avoid liability. When Hunter provided information to the union representative, Koch got its chance. However, the cases that Hunter cites to support this theory instead underscore the weaknesses in her case.

For instance, Hunter cites <u>Mandell v. County of Suffolk</u>, 316 F.3d 368 (2d Cir. 2003), for the argument that "opportunities for retaliation do not always immediately present themselves" and that the passage of time therefore does not mean that there is no causation. Hunter Resp. (Doc. No. 245) at 104. However, <u>Mandell</u> is easily distinguishable from this case. There, the plaintiff was denied a series of promotions and given a transfer tantamount to a demotion several years after he

had twice publicly criticized his employer for
discriminatory attitudes and practices. The Second
Circuit rejected the argument that the "substantial time
lapse between [the] plaintiff's speech and the adverse
employment actions" negated causation, explaining that
ample evidence revealed "negative attitudes" against the
plaintiff had persisted for years after he engaged in
protected speech; indeed, two individuals responsible for
awarding the promotions for which the plaintiff was passed
over had made negative comments about the first incident
five years after it occurred, which evidenced the
durability of their animus. Id. at 384. Here, Hunter has
not produced a shred of evidence to show that Koch
harbored continued rancor after it initially disciplined
her. Moreover, the court in Mandell specifically
distinguished the facts in that case from one in which the
adverse action at issue was termination. The court
reasoned: "It makes logical sense that if an employer
wishes to retaliate by firing an employee, he is likely to
do so soon after the event. In a failure to promote case,

19

however, the opportunities for retaliation do not necessarily immediately present themselves." Id. (emphasis added).

Hunter also cites Swisher v. Hinshaw & Culberston, No. 05-1174, 2007 WL 1655242 (C.D. Ill. June 6, 2007) (McDade, J.), to argue that waiting to retaliate is a tactic a savy employer might use to avoid liability; but again, this case only highlights Hunter's lack of evidence to support causation. In Swisher, the plaintiff made a sexual-harassment complaint against one of the partners in the law firm where she worked as an office coordinator. Four years later, she was fired. The court reasoned that a lengthy gap in time between protected activity and an adverse-employment action does not preclude a plaintiff from showing causation. However, it nevertheless admonished that the plaintiff would have to "bring forward enough circumstantial evidence to overcome the weakness in her claim created by the four year gap." Id. at *7. To that end, the plaintiff made the unsupported contentions that the law partner's conduct was "unrelenting," that he was

"difficult" and had conflicts with other employees, and that, as an attorney, he knew better than to immediately retaliate.  <u>Id</u>.  She argued that, taken together, this evidence revealed that the partner was "waiting in the weeds, lingering for an opportunity to get [her] fired." <u>Id</u>. (quotations and citations omitted).  The court found this thin evidence insufficient to support causation.

Here, Hunter's evidence is even more minimal than what the plaintiff presented in <u>Swisher</u>.  Indeed, she does not allege any facts, much less offer evidence, to show that, during the year between her latest complaint and her termination, Koch harbored any continuing animosity toward her and was waiting for a reason to let her go.  "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  <u>Gray v. City of Montgomery</u>, 756 F. Supp. 2d 1339, 1350 (M.D. Ala. 2010) (Thompson, J.) (quotations and citations omitted) (alterations in original).  Here, the one-year delay and

21

the lack of any other evidence of causation are fatal to Hunter's claim.

Even if Hunter had succeeded in establishing a prima-facie case, however, summary judgment would still be due on this claim because Koch has provided a legitimate, non-discriminatory reason for terminating Hunter, and Hunter has failed to show that this was a pretext for retaliation. Hunter's only evidence of pretext is her own statement in her deposition that she was instructed to give Sharpley employee information.   She also reiterates, without providing any evidence, that an employee named Janice Bailey had done the same thing and was not terminated. Such "naked assertions [are] not evidence of pretext." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332 (11th Cir. 1998); see also Gerard v. Bd. of Regents of State of Ga., 324 F. App'x 818, 826 (11th Cir. 2009) ("Unsupported assertions are not evidence of pretext.") (citing Standard, 161 F.3d at 1332).

22

* * *

Accordingly, it is ORDERED that the defendants Koch Foods of Alabama, LLC, David Birchfield, and Koch Foods, Inc.'s motions for summary judgment (doc. nos. 127, 130, 133, 134, and 155) are granted as to plaintiff Tina Boyd's pay-discrimination claim under § 1981 and plaintiff Tarsha Hunter's retaliation claim under Title VII, and these claims shall not go forward.  These motions have now been resolved in all respects.  This case is not closed.

DONE, this the 20th day of September, 2013.


  /s/ Myron H. Thompson  
UNITED STATES DISTRICT JUDGE